HARRINGTON v. FIRST NATIONAL BANK OF CHITTENANGO, appellant.

*Master and servant — discharge of servant — Employee of National Bank.*

Plaintiff, who had been hired by the president of a national bank as teller for a specified time, refused to obey certain orders of the cashier. Some time afterward the cashier informed the president of such disobedience, and he thereupon, before the expiration of the specified time, discharged plaintiff. *Held,* that plaintiff was not. entitled to recover his salary for the unexpired portion of the term of service.

A servant may be discharged by the master for misconduct before the expiration of the time for which he was hired, although the discharge is not made at the precise time of the misconduct, nor the grounds stated.

A national bank cannot hire one of its officers for a specified time.

Knowledge, without objection, by the directors of a bank that one is acting in its employ, does not ratify the details of a contract for his employment, by the president, unless they knew of such details.

THIS was an action by the plaintiff to recover wages or salary, as the teller of a bank, from September, 1870, at which time he was discharged, until 1st April, 1871, which he claims was the end of the year for which he was employed, at the rate of $70 per month.

The plaintiff recovered a verdict at the circuit for the amount of his claim. Exceptions were taken by the defendant, an order made allowing a case to be made, and that the exceptions be heard in the first instance at the general term. The exceptions, and the facts upon which they were founded, sufficiently appear in the opinion.

*Lansing & Kellogg,* for plaintiff.

*D. D. Walrath* and *Charles Mason,* for defendant.

P. POTTER, J. The plaintiff was dismissed by the president of the defendants. It was one of the defenses, set up in the answer, that during the plaintiff's employment he was insubordinate and disobedient to the directors of the defendant, that he disobeyed and disregarded their lawful instructions and commands, specifying the particulars, thereby forfeiting his position; and that for that reason he was dismissed, etc. There was evidence in the case that the plaintiff was left in charge of the bank after bank hours and at

night. The bank is a place of deposit of bonds of the bank — of the stockholders, directors, and people of the vicinity — the outside windows slide up and down, but the building had inside iron shutters. These inside shutters the plaintiff left open at night. The evidence was, that he was remonstrated with by the cashier for this, and informed that it would not answer; that there was too much property there to be thus exposed; that the plaintiff replied that the windows would be left open if he desired it; that on that afternoon the cashier closed the iron shutters, and found out the next day they had been open again. The cashier testifies that he had another interview with the plaintiff next evening; that the plaintiff persisted in his conduct, and said he should open them just when he pleased.

There is some conflict of evidence as to these interviews, but none to the fact of leaving the windows open. There was also evidence of disobedience of the commands of the cashier about the entries in the books, not necessary to be stated. By the testimony of the cashier, the plaintiff was a relative of his, and he did not inform the president of this misconduct until about the time the plaintiff was dismissed. There is some conflict of evidence about the time of these occurrences, and the period between them and the discharge, and also as to the time when the president was informed of them. The president was seldom at the bank. This statement, however, is sufficient to present one of the points. The defendant's counsel asked the judge to charge, as a proposition, among other things, as follows: " *Twelfth.* Mr. Stewart (the president) was justified in dismissing the plaintiff for misconduct." This the court refused, and there was an exception; and also,

" *Thirteenth.* The president was not required to state any of his reasons for dismissing the plaintiff. If they existed that was enough." The court refused to charge this, and there was an exception.

If these propositions were right, and the refusal so to charge was error, the learned judge did not cure the twelfth proposition by his subsequently charging it with a qualification as follows: "There were sufficient grounds for defendants' discharging the plaintiff from their employment, *if such grounds had been acted upon when they occurred,* or *had been stated to the plaintiff when he was discharged.*" The learned judge then adopts these qualifications as law, and adds: " As no reason or ground was stated to the plaintiff for his dismissal, when he was dismissed from the defendants' em-

ployment by the defendants' president; his discharge is not justified by the evidence if there was a valid contract then in force for plaintiff's employment for the term of one year from the first day of April, 1870, or by the month during that year." This portion of the charge was also duly excepted to.

I am inclined to think there was error both in the refusals to charge, and in this portion of the charge. It is assumed by the learned judge in these propositions, that the president of this bank had the power to dismiss the plaintiff from employment, upon sufficient grounds, if done at the proper time, if the grounds upon which he was dismissed had been stated when he was discharged. The jury were bound to regard this as the law, and to act upon it accordingly. The finding of the jury, then, being in favor of the plaintiffs, we must assume that the fact was established, in their minds, that though there was sufficient ground for dismissal, yet the discharge was illegal, because the discharge was not made when the act which was the cause of discharge was committed, or because the ground of discharge was not stated at the time of discharge. I think both these hypotheses are unsound. The first was dependent upon the existence of certain facts, which the judge assumed, but which were in conflict, and were therefore for the consideration of the jury. There is evidence that the discharge was made by the president about the time he was informed of the plaintiff's misconduct. If the fact of delay had been certain, as the judge assumed, it might perhaps have been proper to have submitted to the jury, whether the delay was not unreasonable, and whether the objection had not been waived or condoned. No such proposition was charged. From the charge, the jury were certainly instructed, in effect, that the discharge was illegal *because* the grounds were not stated to plaintiff at the time.

It is not necessary to discuss the proposition that for misconduct, or disobedience to lawful orders, the plaintiff could be dismissed — the judge correctly so charged. So, too, the judge charged that in this case, sufficient grounds existed for the plaintiff's discharge. We have, therefore, upon this point only to examine the legal propositions: 1st. Whether the dismissal must of necessity be at the time of the occurrence of the misconduct; and, also, 2d. If it is required by law, that the grounds of the discharge be given at the time the discharge is made.

The case of *Cussons* v. *Skinner*, 11 Mees. & Wels. 161, was the

case of the dismissal of the manager of a corporation for disobedience and misconduct. It was held that where there has been an act of disobedience or misconduct by a servant, known to the master at the time he discharges him, although the master does not mention *that* as the precise ground of discharge, he may afterward, by showing the fact existed, *and that he knew it*, justify such discharge. That case, it is true, turned upon a question of pleading, whether upon the defense of *willful disobedience and loss consequent*, the defense was not bound to prove these allegations, but as a general rule it was laid down as above cited. But that court cited as authority to sustain their holding, the case of *Ridgway* v. *Hungerford Market Co.*, reported in 3 Ad. & Ellis, 171; and 4 Nev. & Man. 797. That was the case of the dismissal of a clerk hired at a salary of £200 per annum, payable quarterly. Various questions arose in that case, the decision of which will apply to other points in the case at bar; but on the argument at bar in the court of king's bench, the counsel for the plaintiff put a supposed case to the court as follows : " Suppose a servant guilty of misconduct in June, and that the master knowing it, retains him till November; or, suppose a master in ignorance of misconduct, dismisses a servant, can the misconduct be set up as determining a contract which was deliberately determined on another ground ? " Lord DENMAN, Ch. J., replied to these suppositions as follows: " In the present case the misconduct was known; and we cannot say the employers were bound to allege it *at the time* as the reason for dismissal; nor can we inquire as to their motives. If a sufficient cause of dismissal existed, they had a right to use it " (p. 174). Afterward, in bank, in consultation with the judges, Lord DENMAN said: " It is unnecessary to discuss how it would be, if the master, at the time of the dismissal, had no knowledge of the fact which was to justify it, yet I think the justification would be good, even if the fact, existing at the time, were not known to the master." LITTLEDALE, J., said, in the same case : " Neither the court or the jury can discuss the ultimate motive. If a justifying cause exists, the master may assign it whenever the action is brought ; and whether any other cause exists is not material. It may be that the master dislikes the servant, and chooses to take advantage of some improper act." COLERIDGE and LITTLEDALE, JJ., expressed opinions to the same effect.

The same principle was held in *Baillie* v. *Kell*, 4 Bing. N. C. 651. It was a like case of suit for wages, after a dismissal of a clerk. Some

grounds were assigned; other grounds were proved on the trial. In delivering the opinions of the court, PARKE, J., said: "But it is said the defendants did not, in fact, discharge the plaintiff for any one of the grounds alleged. That was entirely a question for the jury, who might well have thought that the defendants, without waiving the objection, *kindly abstained from sending the plaintiff forth from their service with a stigma on his character.*" These cases have not been questioned, to my knowledge, in our courts. If they correctly hold the law, there was error in the case at bar on the trial. But it is argued that the propositions above discussed, charged and refused to be charged by the judge, must be viewed as connected with other parts, and with the whole charge, and was only a hypothetical view of the propositions, as connected with the president's power, and not that of the defendants, and that the jury must so have understood. This argument is not sustained by the facts. The last request made of the judge by the defendant's counsel, and the reply made to it by the judge, is an answer to this view. That request to charge was, "that the *defendant* was not bound to allege any special case of misconduct, because of his dismissal being for a special cause." To which the judge replied: "I should say that, if it was acted upon at that time." Certainly, either the president or the defendant did possess the power to discharge. The judge held the same rule as to each, viz.: "That the grounds must be stated at the time." The learned judge was fair and frank in expressing his legal view to the jury. He informed them that no grounds were stated for the discharge, and it was left to rest on the ground in regard to the shutters. (I think this was an error of fact. The cashier expressly testifies to disobedience in relation to entries in the books as to a check.) But, still referring to the plaintiff's conduct in regard to the shutters, the judge expresses his legal opinion, "that these grounds cannot now be considered as a justification for his discharge." This would seem to be in direct conflict with what he had previously charged, but for the reason given in the argument, he addressed to the jury by way of illustration; which was, in effect, that the discharge was too long after the offense, and that he could not *then* be discharged unless he had repeated the offense, "*without giving him the reason.*" The question of lapse of time, after the offense, was not a question of law for the judge; besides the fact as to time was greatly in conflict. It was a question of fact for the jury. It was error for the judge to

assume that knowledge of the offense had been for a long time; that it was in the month of May, as testified by plaintiff, and ignore the testimony of the cashier; that it was in August or September of the same year when the president was first informed of it.

I have thus far discussed this question upon the doctrine of the common law. I think the power as well the right of the defendants to dismiss the plaintiff exists by the act of congress, under which all national banking institutions are organized, of which law the plaintiff is presumed to have notice. That act, among other things, authorizes such associations " to appoint a cashier and such other officers and agents as their business may require, and to remove them at pleasure and appoint others in their place." The plaintiff's appointment could legally be made in no other way, and could only be held by the tenure specified, to wit: the pleasure of the appointing power and the place must be regarded as having been taken and accepted under the provisions of this act.

If I am right in this view, then the learned judge erred in refusing to charge the sixth proposition of the defendant's counsel, that " the by-laws of the bank and the charter of the defendant will not permit any officer or officers of the bank to make a contract which will deprive the directors of the free right to remove their teller at any time they please, and if such a contract was made by Mr. Stewart (president) as the plaintiff claims, for a year, it is illegal and void, being in contravention of the charter, and is also void upon principles of public policy." Though the learned judge refused to charge this in the form requested, and an exception was taken, he did afterward charge it, with a qualification, " that the contract was invalid unless ratified by the directors; and that if such a contract was made as plaintiff claimed, and it was ratified by the directors of the defendant, by acquiescence, with knowledge that the plaintiff was in service of the defendant as their teller or clerk, the contract became valid by such ratification, and the plaintiff is entitled to recover damages for being so discharged." And he afterward charged them, " that if the contract was made by the president and was ratified " as above stated, the plaintiff was entitled to recover for seven months, wages, as damages, at the rate of $840 per year," all of which was excepted to. It will be remembered he had before also charged them, " that sufficient grounds existed for plaintiff's discharge, if the grounds had been acted upon when they occurred, or the grounds had been stated when he was discharged." I think this whole charge

though by no means so intended, was calculated to mislead the jury, and that it is not sound.

The plaintiff's discharge was ratified precisely in the same manner that his employment was. If the employment was ratified, the discharge was also. The judge concedes there was sufficient grounds for the discharge; he concedes the discharge to have been made by the defendants; yet holds the law to be, upon this hypothesis, that if the employment was in form for a year, the plaintiff can recover his salary, even after his discharge, for the remainder of the year. I do not concur in these views. I think there was another condition in the contract, a condition that is always implied in every contract of the kind. Whether it was for a month, a year, a definite or indefinite time, it was subject to the right of the employer to dismiss the employee for sufficient cause; and if sufficient cause for dismissal exists against the employee, it is a forfeiture of future salary. One of the considerations, which enter into the contract between the employer and employee, is good conduct by the employee, at least so good as not to furnish sufficient cause for dismissal; and a failure so to perform amounts to a forfeiture of the contract, and justifies a discharge. The case of *Ridgway* v. *Hungerford Market Co.*, *supra*, was an employment by express contract, at a salary of £200 per annum, payable quarterly. His employment commenced on the 10th June, 1830; he was continued to the 17th April, 1833, when he was dismissed; he offered and was willing to remain in service. He brought this action in December, 1853, for three-quarters salary. It was contended by the defendants, that being dismissed for sufficient cause, he was not entitled to any portion of his current salary. Lord Ch. J. DENMAN tried the cause, and submitted it as a fact to the jury whether the case for discharge was sufficient. The jury found the cause sufficient. The issue, then, as a question of law, was precisely the same as the question in the case at bar; and thus it came before the court of king's bench. The Lord Ch. J. said: "The jury having found the cause of discharge sufficient, the court must so hold," and he added, *"Turner* v. *Robinson*, 5 Barn. & Adol. 789, and many other cases, have shown that if a party *hired for a certain time* so conduct himself that he cannot give the consideration for his salary, he shall forfeit the current salary even for the time for which he has served." PATTISON, J., in the same case concurring, says: "By his own act he gives the defendants the power of displacing him." And COLERIDGE, J., said: "Although a party

be hired for a given time, the master is justified in dismissing him for misconduct; and, in that case, he cannot recover *pro rata.*" The case of *Turner* v. *Robinson*, 25 Eng. Com. L. 257, was a like case of a servant employed at a salary of £80 per annum, dismissed for misconduct before the year expired, and who sued for his wages for the year, and was nonsuited on the trial; and, upon a rule to show cause, the case was brought before the full bench. PARKE, J., who gave the opinion, said (assuming the employment to be for a year): "Having violated his duty before the year expired, so as to prevent the defendants from having his services for the whole year, he cannot recover wages *pro rata.*" So, too, in the case of *Spain* v. *Arnott*, 2 Stark. N. Pr. 227, it was held by Lord ELLENBOROUGH, " that if a servant, hired for a year, refuse to obey his master's orders, the master is justified in dismissing him before the end of the year, and the servant cannot recover any wages." See, also, *Baillie* v. *Kell*, 4 Bing. N. C. 638. This same rule is laid down by Chitty on Cont. (10 Amer. Ed., by Perkins) 628, 9. See, also, *Amor* v. *Fearon*, 9 Ad. & Ell. 551. I find nothing to shake the authority of these, and a great number of other cases to the same effect. I think, therefore, the refusal to charge as requested was error. Where the servant is hired for a time certain, and dismissed without sufficient cause, then the rule, it is conceded, is as charged by the learned judge. Parsons, in his treatise on contracts, adopts the same rule, as the established law, vol. 1, p. 520, 521, and notes and cases cited.

I think there was another error in the charge of the learned judge, in his fourth proposition, as explained by the seventh. In the fourth proposition he charged the jury that if the president had made such a contract with the plaintiff as plaintiff claims, and that contract was subsequently ratified by the directors of the defendant *by the acquiescence with knowledge that the plaintiff was in the service of the defendant as its teller or clerk,* the contract became valid by *such* ratification, and the plaintiff " is entitled to recover damages for being so discharged." If this charge carried to the mind of the jury that what was specified in it constituted a legal ratification (as to my mind clearly it did), it was erroneous. The jury could well so understand. · The language of the charge had a clear tendency to make them understand that a ratification by the defendant, by *acquiescence,* not with knowledge that the president had employed him, but with knowledge that he was in their service as their teller or clerk, and that an acquiescence in that knowledge was a ratification

of the president's contract, of which employment by the president there is no evidence of knowledge. The evidence that he was in their service adds nothing to the evidence of ratification, but the contrary. He had been for years in their employment, performing the same duties, under an express contract made by themselves, made by resolution, made at a specified consideration. The legal presumption, then, is, that he was continuing on under that contract until the defendants were informed to the contrary. But by the explanation made by the judge of his meaning, in his seventh proposition, it is clear that his definition of what constitutes a legal ratification, especially as applied to this case, was erroneous. He says: "The defendant acquiesced in the employment of the plaintiff by their president, if they knew he was acting in their bank as teller or clerk, and made no objection to his serving there at or after the defendant's directors had a meeting at their bank." To make a ratification by the principal of the unauthorized act of an agent good, it must be made with a full knowledge of the facts which affect the rights of the principal. This main feature of ratification is omitted. This knowledge was a question for the jury, not for the judge. The facts, if they were as assumed by the judge (as I think they were not), were greatly in conflict, and were insufficient to constitute a valid ratification. *Nixon* v. *Palmer*, 8 N. Y. 398; *Brass* v. *Worth*, 40 Barb. 648. There was not only no direct evidence of knowledge by the defendants of the president's hiring the plaintiff, but the president's testimony, to the contrary, is as follows: "I don't think I communicated to any of the directors about the hiring of him." "No action of the board of directors, in regard to the increase of wages to him." "There was no meeting of the finance committee after January and prior to July of that year." The vice-president swears he knew nothing of the hiring by the president until the plaintiff was discharged. Daniel Gates, a director, swears to the same, and the only knowledge the cashier had was the fact that he found, on the 29th June, 1870, that the plaintiff had credited himself on the books of the bank for April and May, $70 each.

Without noticing other objections, I think those that have been discussed are sufficient to justify the ordering a new trial, costs to abide the event.

MILLER, P. J., and PARKER, J., concurred in the result.

*New trial ordered.*